**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JOYCELYNN BAHE, Individually and
as Guardian of T.B., a minor; CRAIG BAHE,
as Representative of the Estate of CHARLA
BAHE, Deceased; FRANCILLA MAY THOMPSON,
as Guardian of K.K.T., a minor; and DIAMOND
RAYVON BAHE,

       Plaintiffs,

                                                                 Case No. 1:19-CV-00218-SCY-GBW

V.

JAG TRANSPORTATION, INC.; ELISARA
TAITO; JOHN DOE; BRIDGESTONE AMERICAS
TIRE OPERATIONS LLC, a foreign company which is
the successor to BRIDGESTONE/FIRESTONE NORTH
AMERICAN TIRE, LLC and THE NEW MEXICO
DEPARTMENT OF TRANSPORTATION,

       Defendants.

**PLAINTIFFS' FIRST AMENDED COMPLAINT FOR WRONGFUL DEATH,
PERSONAL INJURIES, LOSS OF CONSORTIUM AND PUNITIVE DAMAGES**

      COMES NOW Plaintiffs, by and through counsel, Potts Law Firm, LLP (Adam Funk and Timothy Micah Dortch (Association filed on 3/15/2019, Doc. 8)), and for their First Amended Complaint for Wrongful Death, Personal Injuries, Loss of Consortium and Punitive Damages respectfully state as follows:

**PARTIES, JURISDICTION, AND VENUE**

    1.       Plaintiffs are residents of the State of Arizona.

    2.       Defendant JAG Transportation, Inc. ("JAG") is a foreign corporation doing business in New Mexico. JAG has been served with process.

3. Defendant Elisara Taito ("TAITO") is a resident of the State of California and may be served with process at his residence of 310 W. Dakota Avenue, Apt. 204, Fresno, California 93705, and the issuance of papers for service is requested at this time.

4. Defendant John Doe ("DOE") is a resident of unknown location.

5. Defendant Bridgestone Americas Tire Operations LLC ("BRIDGESTONE") is a Delaware Corporation with its principal place of business in Nashville, Tennessee. Bridgestone is registered to do business in New Mexico pursuant to Article 17 of the Business Corporations Act and is engaged in and deriving profits from conducting business in the State of New Mexico through the distribution of its products in the stream of commerce in New Mexico. Bridgestone is the successor company to Bridgestone/Firestone North American Tire, LLC, and is liable for the wrongful acts of Bridgestone/Firestone North American Tire, LLC. Bridgestone can be served through its registered agent, National Registered Agents, Inc., at 206 S. Coronado Ave., Espanola, New Mexico 87532.

6. Defendant New Mexico Department of Transportation ("NMDOT") is an official governmental entity of the State of New Mexico and, for purposes of this action, is a citizen of New Mexico established under the laws of New Mexico, having its principal place of business located in Santa Fe, New Mexico. Pursuant to NMRA 1-004(H), service may be made on Defendant NMDOT by delivering a copy to the head of the NMDOT and the New Mexico Attorney General.

7. Sovereign immunity is waived for Plaintiffs' claims against Defendant NMDOT under N.M. Stat. Ann. § 41-4-11 (1991), under which Defendant NMDOT is not immune from "liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties during the

construction, and in subsequent maintenance of any bridge, culvert, highway, roadway, street, alley, sidewalk or parking area." The term "maintenance" includes upkeep and repair, as well as a reasonable response to a known dangerous condition on a roadway. *Martinez v. NMDOT*, 2013-NMSC-005, ¶ 21, 296 P.3d 468, 472–73.

8. Timely written notice of Plaintiffs' claims was given to NMDOT pursuant to NMSA 1978, Section 41-1-16 (1977).

9. All corporate, LLC, and governmental agency defendants acted by and through their agents, partners, officers and employees and are responsible for their acts or omissions through the doctrines of respondeat superior or agency.

10. The incident giving rise to this suit occurred in McKinley County, New Mexico.

11. This Court has jurisdiction over the parties to and subject matter of this litigation.

12. This Court is the appropriate venue for resolution of all disputes as between the parties hereto.

## GENERAL FACTS AND ALLEGATIONS

13. On August 30, 2018, in McKinley County, New Mexico, Plaintiffs Joycelynn Bahe, minor T.B., Charla Bahe and Diamond Bahe were passengers on a Greyhound bus traveling westbound on Interstate 40 near Thoreau, New Mexico.

14. At this stretch of I-40, the roadway consists of two lanes for east-bound traffic and two lanes for west-bound traffic. The median of I-40 along which the semi-truck and trailer traveled did not contain a median or barrier to prevent cross-over accidents.

15. At the same time, TAITO was driving a semi-truck and trailer eastbound on Interstate 40 near Thoreau, New Mexico.

16. At all times relevant herein, JAG owned and operated the semi-truck being driven by TAITO.

17. At all times relevant herein, TAITO was the agent, servant, and/or employee of JAG and was acting within the course and scope of said agency, servitude, and/or employment.

18. TAITO lost control of the semi-truck after the left front tire suddenly, and without warning, experienced a sudden loss of air and tread separation.

19. Upon information and belief, BRIDGESTONE, acting through their employees and agents, manufactured, assembled, supplied, marketed, distributed and sold the tire in question.

20. As a result of the sudden loss of air and tread separation of the left front tire of TAITO's tractor-trailer, TAITO failed to maintain the semi-truck and trailer in the eastbound lanes of traffic.

21. TAITO drove the semi-truck and trailer across the median dividing the eastbound and westbound lanes of traffic on Interstate 40.

22. TAITO drove the semi-truck and trailer into the westbound path of the Greyhound bus in which Plaintiffs Joycelynn Bahe, minor T.B., Charla Bahe and Diamond Bahe were passengers, thereby causing the bus and the semi-truck to collide.

23. Due to the severity of the impact, Plaintiff Charla Bahe lost her life after the impact and due to negligence of Defendants.

24. At all times relevant herein, Plaintiffs exercised an appropriate degree of care for their own safety.

25. The death and injuries identified above are a direct and proximate result of the defective and unreasonably dangerous nature of the failed tire in question, and the negligence of BRIDGESTONE, JAG, TAITO and NMDOT.

## COUNT I - NEGLIGENCE OF DEFENDANT TAITO

26. Plaintiffs hereby incorporate all prior paragraphs of this Complaint as though stated again within this Count.

27. Prior to driving the semi-truck and trailer, TAITO failed to adequately inspect the vehicle.

28. TAITO operated the semi-truck and trailer in a negligent, malicious, willful, reckless, and wanton manner which caused the subject collision.

29. The negligent, malicious, willful, reckless, and wanton acts and/or omissions of TAITO were the direct and proximate cause of the subject collision and Plaintiff' s resulting injuries and damages.

30. The malicious, willful, reckless, and wanton acts and/or omissions of TAITO which were the direct and proximate cause of the subject collision and Plaintiffs' resulting injuries and damages give rise to punitive damages under NMRA 13-1827.

31. To the extent that TAITO violated applicable statutes and/or regulations, TAITO is to be considered negligent per se and strictly liable to the Plaintiffs.

## COUNT II - VICARIOUS LIABILITY JAG

32. Plaintiffs hereby incorporate all prior paragraphs of this Complaint as though stated again within this Count.

33. By virtue of the agent, servant, and/or employee relationship between TAITO and JAG, JAG is vicariously liable for the negligent, malicious, willful, reckless, and wanton acts and/or omissions of TAITO.

34. JAG is financially responsible for Plaintiffs' injuries and damages.

## COUNT III - NEGLIGENCE JAG

35. Plaintiffs hereby incorporate all prior paragraphs of this Complaint as though stated again within this Count.

36. Prior to allowing TAITO to drive the semi-truck and trailer, JAG failed to adequately inspect the vehicle.

37. JAG failed to adequately maintain the subject semi-truck.

38. JAG failed to adequately train TAITO how to maintain control of a semi-truck and trailer.

39. JAG knew or should have known that TAITO was operating the semi-truck and trailer in a negligent, malicious, willful, reckless, and wanton manner by operating the semi- truck and trailer in an inadequately maintained state.

40. JAG had sufficient control over TAITO while he was driving the semi-truck and trailer that JAG could have prevented TAITO from driving the semi-truck and trailer in a negligent, malicious, willful, reckless, and wanton manner.

41. JAG was negligent in the hiring, supervision, and/or retention of TAITO.

42. In order that Plaintiffs may plead all causes of action and/or potential causes of action applicable to this loss, Plaintiffs state that in the event it is determined that JAG was negligent in equipping and/or maintaining the subject semi-truck and trailer involved in the subject collision, said acts and/or omissions on the part of JAG are pied as additional bases upon which the Plaintiffs may seek relief against JAG.

## COUNT IV - NEGLIGENCE BRIDGESTONE

43. The tire in question was manufactured by Defendant BRIDGESTONE.

44. This particular tire was defective, unreasonably dangerous, and such defect was a producing cause of the injuries and subsequent death Plaintiff Charla Bahe, as well as the injuries sustained by the remaining Plaintiffs.

45. Defendant BRIDGESTONE researched, developed, designed, manufactured, marketed, assembled, processed, inspected or failed to inspect, tested or failed to test, warranted, sold and placed into the stream of commerce the subject tire in question on the 2016 Freightliner tractor-trailer involved in the crash at issue. The subject tire turned out to be unreasonably dangerous and defective in that the product was unreasonably dangerous as developed, designed, manufactured, assembled, processed and tested because Defendant BRIDGESTONE knew that the tire would be involved in such use and failed to equip it with safety mechanisms such that the tire would not come apart on the highway resulting in injury and/or death to the motoring public.

46. Defendant BRIDGESTONE was negligent in the design, manufacture, assembly, marketing, processing, forging and testing of the tire in question for its ordinary and expected use.

47. Defendant BRIDGESTONE's duty to use ordinary care to avoid foreseeable risk of injury continued after the tire in question left their possession if they knew, or should have known, of a foreseeable risk of injury or death caused by the condition of the tire in question or the manner in which it could be used.

48. Defendant BRIDGESTONE had a duty to use ordinary care to warn of a risk of injury or death about which they knew or should have known.

49. Defendant BRIDGESTONE had a duty to use ordinary care to provide directions or instructions for use of the tire in question to avoid risk of injury or death caused by a foreseeable manner of use.

50. Defendant BRIDGESTONE had a duty to use ordinary care to inspect the tire in question for conditions which could expose users to risk of injury or death. Alternatively, BRIDGESTONE had a duty to inspect the tire in question before selling it for conditions which could expose users to risk of injury or death when they had knowledge which would lead a reasonably prudent person under the same or similar circumstances to undertake such an inspection.

51. Defendant BRIDGESTONE had a duty to repair the tire in question before selling it with condition which would expose users to risk of injury when they knew or should have known of the need for repair.

52. The duty of care increases with severity of danger, thus Defendant BRIDGESTONE's duty was especially high given the likelihood of serious injury or death from a defective tire failing at highway speeds.

53. Defendant BRIDGESTONE breached their duties of care and, therefore, were negligent in at least the following ways:

   A. in failing to adequately and properly test and inspect the tire in question;

   B. in failing to utilize and/or implement a reasonably safe design in the manufacture of the tire in question and similar tires;

   C. in failing to utilize quality materials and workmanship in the manufacture of the tire in question and similar tires;

   D. in failing to heed the warning and notice that during the normal and expected use of tires similar to the tire in question, serious injuries and deaths had occurred;

   E. in failing to adequately and properly warn Defendants JAG and TAITO of the defective condition of the tire in question;

   F. n representing to the public, to regulators, and to Defendants JAG and TAITO that the tire in question and similar tires were safe for normal use;

   G. in failing to recall the tire in question or prevent its distribution and sale;

**FIRST AMENDED COMPLAINT** - Page **8** of **20**

  H.  in allowing a consumer vehicle to be equipped with the tire in question;

  I.  by instituting a cost-cutting campaign, known as C-95, which resulted in the defective condition of the tire in question and similar tires;

  J.  by utilizing substandard materials during the manufacture of the tire in question and similar tires;

  K.  by failing to implement adequate quality control during the manufacture of the tire in question and similar tires;

  L.  by rushing the tire in question and similar tires through production; and/or;

  M.  otherwise failing to use that care which a reasonably prudent person would in the same or similar circumstances in the conduct of its business.

54. Defendant BRIDGESTONE is liable to Plaintiffs under the law in that it represented said product to be safe, when in fact it was unsafe, defective, unreasonably dangerous, and unfit for the ordinary purpose for which it was intended. Defendant BRIDGESTONE thereby made a material representation as to the safety quality of the product in question and such representation was false.

55. Defendant BRIDGESTONE thereby made a material representation as to the safety quality of the product in question and such representation was false.

56. The defect was a substantial factor in causing the injury.

57. Defendants JAG and TAITO were foreseeable users of the tire in question for a purpose and in a manner which could be reasonably foreseen.

58. The foregoing acts/or omissions of Defendant BRIDGESTONE were a producing and/or proximate cause of the Plaintiffs' damages.

59. The foregoing acts and/or omissions of Defendant BRIDGESTONE were also a producing and/or proximate cause of Plaintiff Charla Bahe's fatal injuries.

## COUNT V – STRICT LIABILITY BRIDGESTONE

60. Plaintiffs hereby incorporate all prior paragraphs of this Complaint as though stated again within this Count.

61. Defendant BRIDGESTONE manufactured, designed and placed into the stream of commerce the failed tire in question in a defective condition unreasonably dangerous to any user.

62. At the time the failed tire was manufactured and placed into the stream of commerce by BRIDGESTONE, it contained manufacturing defects, which were unreasonably dangerous to persons such as the Defendants JAG and TAITO, who were intended and reasonably foreseeable users.

63. The failed tire in question was unreasonably dangerous and defective because of its design characteristics, lack of sufficient warnings, and propensity to permit a tread and belt separation.

64. Because of its defective nature, the failed tire in question was unfit and unreasonably dangerous as used in a foreseeable manner, and BRIDGESTONE knew, or in the exercise of reasonable care should have known, that the failed tire in question was unreasonably dangerous in this manner and unfit for its warranted purposes.

65. The failed tire in question was defective and unreasonably dangerous to ultimate users, operators or consumers when sold and distributed by BRIDGESTONE because of the design, manufacturing, and inspection defects that caused the tire in question to suddenly, and without warning, fail by tread-belt separation including, but not limited to, the following:

   A. the failed tire in question was not adequately designed to prevent tread separation despite the fact that such safer designs were technologically feasible at the time the failed tire in question was made, in use within the industry, and employed by other tire manufacturers as well as BRIDGESTONE;

   B. the failed tire in question was not reasonably durable for its intended and foreseen uses;

**FIRST AMENDED COMPLAINT** - Page **10** of **20**

C.      the failed tire in question's components were defectively and inadequately researched, developed, designed, manufactured, and selected without regard to providing adequate strength to prevent a tread separation in foreseeable conditions;

D.      The failed tire in question was not designed with adequate nylon reinforcement and therefore did not adequately reinforce the belt package even though such nylon reinforcement technology was feasible, used in the industry, and employed by other tire makers and by BRIDGESTONE;

E.      The failed tire in question was designed without a proper or adequate strip of additional rubber at the belt edges, which is something necessary for adequacy;

F.      The failed tire in question and its component parts were defective due to BRIDGESTONE's failure to test or adequately test the tire and its parts to ensure they were reasonably safe and suitable for their intended purpose and use;

G.      The failed tire in question and its component parts were defective due to susceptibility of the internal rubber to oxidation at a level accelerated beyond reasonable expectations, created by the lack of sufficient anti-degradant additives in the rubber;

H.      The failed tire in question was defective in its rubber bonding as indicated by voids built into the tire during the assembly process and observable in the separated surfaces in the tire's failure zone;

I.      The failed tire in question was designed without properly or adequately using sufficient zinc oxide as a curing agent, which is something necessary for adequacy;

J.      The failed tire in question was defective due to BRIDGESTONE's failure to design and manufacture the inner liner of the tire with adequate thickness and durability to sufficiently minimize air permeation into the internal structure of the tire;

K.      The failed tire in question and its components were defective due to BRIDGESTONE's failure to design the tire and components to ensure that the tire and components wear out before experiencing a structural failure such as tread and belt separation;

L.      The failed tire in question was manufactured by BRIDGESTONE without adequate quality control measures;

M.      The specifications for the failed tire in question were improper and the tire was not manufactured in accordance with the specifications designated for the failed tire;

N.      The failed tire in question was defective due to BRIDGESTONE's failure to include adequate warnings on the tire regarding tire aging and service life; and

O.  The failed tire in question was manufactured by BRIDGESTONE with defective and inadequate adhesion of the steel belts to surrounding material resulting in tread belt separation and catastrophic failure during normal use.

66. Technologically and economically feasible safer alternative tire designs existed that would have prevented or significantly reduced the risk of injury from a tread separation without substantially impairing the utility of the product, including the proper use of belt edge strips or other rubber strips or wedges or insulation or wraps to increase the rubber at the belt edges, the proper use of nylon belt reinforcements whether in the form of strips or caps or belts or full-belt-width plies, the proper use of inner liners with sufficient splicing and sufficient rubber gauge and sufficient polymer content and sufficient amounts of halobutyl rubber to guard against the permeation of air into the structure of the tire, the proper and enhanced use of rubber antidegradants including a proper antioxidant package, the proper and enhanced use of zinc oxide as a curing agent, and other tire aging and separation countermeasures.

67. Through benchmarking studies, BRIDGESTONE assesses the durability and performance of its tires as compared to the durability and performance of competitor tires.

68. BRIDGESTONE was in the business of manufacturing, distributing and selling tires, including the failed tire in question; BRIDGESTONE is responsible for placing the failed tire into the stream of commerce.

69. Defendants JAG and TAITO were foreseeable users of the failed tire in question, and the failed tire was being used for its intended purpose in an intended manner at the time of the crash.

70. The failed tire in question was transferred from the possession of BRIDGESTONE in a defective condition and the failed tire was substantially unaltered, except for the foreseeable

consequences of aging occurrence of tread wear, from the time it left the control of BRIDGESTONE.

71. As a result of the manufacturing defects listed above, the failed tire in question failed to perform as safely as an ordinary consumer or passenger would expect when utilizing the failed tire in an intended and reasonably foreseeable manner.

72. As a result of the design defects listed above, the failed tire in question failed to perform as safely as an ordinary consumer or passenger would expect when utilizing the failed tire in an intended and reasonably foreseeable manner.

73. As a result of the defects listed above which were not identified at BRIDGESTONE's plant due to careless quality control inspections, the failed tire in question failed to perform as safely as an ordinary consumer or passenger would expect when utilizing the failed tire in an intended and reasonably foreseeable manner.

74. The manufacturing and design defects in the failed tire in question were the direct and proximate cause of the failure by tread and belt separation, which caused the Freightliner to leave the roadway and strike the Greyhound bus.

75. The failed tire in question was defectively designed and defectively manufactured in a negligent and grossly negligent manner, and the tire was in an unreasonably dangerous and unfit condition outside of its warranted standards at the time it left the control of BRIDGESTONE.

76. The manufacturing and design and defects in the failed tire in question were the direct and proximate cause of Plaintiffs' injuries, death and damages.

## COUNT VI – NEGLIGENCE OF NMDOT

77. Plaintiffs hereby incorporate all prior paragraphs of this Complaint as though stated again within this Count.

78. At all times pertinent hereto, Defendant NMDOT, through its employees or agents, was responsible for safely maintaining and operating I-40 near Thoreau, in McKinley County, New Mexico.

79. Defendant NMDOT, through its employees or agents, was under a duty to ensure that I-40 was properly maintained and operated so as not to pose an unnecessary risk of harm to drivers or vehicles on the road.

80. Collisions involving cross-over situations, where vehicles travelling in opposite directions on roadways and highways cross the center lane or median, are common on highways throughout New Mexico and on I-40 in particular.

81. Defendant NMDOT either knew or should have known of the significant risk that cross-over collisions pose. NMDOT either knew or should have known that proper traffic controls or maintenance including Jersey barriers, cable median barriers, metal beams, proper raised medians, and guard rails would prevent high-speed travel in opposite directions causing head-on collisions.

82. Defendant NMDOT intentionally, willfully, recklessly, or negligently failed to meet its duties through one or more of the following acts or omissions:

   A. Failing to devote the resources necessary to identify all potential hazards facing motorists on the road due to crossover accidents;

   B. Failing to respond properly to previous crossover incidents by properly maintaining and remediating all potential hazards facing motorists on the road including, without limitation, installation of guard rail or other barriers to prevent crossover accidents.

83. The intentional, willful, reckless and/or negligent conduct outlined above was a cause of Plaintiffs' injuries, death and damages.

### COUNT VII - NEGLIGENT INFLICTION EMOTIONAL DISTRESS AGAINST TAITO AND JAG

84. Plaintiffs hereby incorporate all prior paragraphs of this Complaint as though stated again within this Count.

85. As a result of the tortious conduct by TAITO and JAG, individually and collectively, Plaintiffs suffered severe shock stemming from a sensory and contemporaneous observation of the horrendous trauma to and passing of other passengers on the bus. As a result, Plaintiffs suffered severe mental anguish and emotional distress.

### COUNT VIII - NEGLIGENT INFLICTION EMOTIONAL DISTRESS AGAINST BRIDGESTONE

86. Plaintiffs hereby incorporate all prior paragraphs of this Complaint as though stated again within this Count.

87. As a result of the tortious conduct by BRIDGESTONE, Plaintiffs suffered severe shock stemming from a sensory and contemporaneous observation of the horrendous trauma to and passing of other passengers on the bus. As a result, Plaintiffs suffered severe mental anguish and emotional distress.

### COUNT IX - NEGLIGENT INFLICTION EMOTIONAL DISTRESS AGAINST NMDOT

88. Plaintiffs hereby incorporate all prior paragraphs of this Complaint as though stated again within this Count.

89. As a result of the tortious conduct by NMDOT, Plaintiffs suffered severe shock stemming from a sensory and contemporaneous observation of the horrendous trauma to and passing of other passengers on the bus. As a result, Plaintiffs suffered severe mental anguish and emotional distress.

## **PLAINTIFFS' INJURIES AND DAMAGES**

90. Plaintiff Joycelynn Bahe seeks by this action to recover the full monetary value of her injuries and damages, together with punitive damages, and all available interest at the maximum legal rate.

91. Plaintiff Joycelynn Bahe's injuries and damages may include, but may not specifically be limited to, the following:

   (a)   Medical bills and related expenses, past, present, and future

   (b)   Physical pain and mental suffering, past, present, and future;

   (c)   Loss of enjoyment of life;

   (d)   Property damage;

   (e)   Miscellaneous expenses, past, present, and future.

92. Plaintiff Joycelynn Bahe, as Guardian of T.B., a minor seeks by this action to recover the full monetary value of his injuries and damages, together with punitive damages, and all available interest at the maximum legal rate.

93. Plaintiff T.B.'s injuries and damages may include, but may not specifically be limited to, the following:

   (a)   Medical bills and related expenses, past, present, and future

   (b)   Physical pain and mental suffering, past, present, and future;

   (c)   Loss of enjoyment of life;

   (d)   Property damage;

   (e)   Miscellaneous expenses, past, present, and future.

94. Plaintiff Diamond Bahe seeks by this action to recover the full monetary value of her injuries and damages, together with punitive damages, and all available interest at the maximum legal rate.

95. Plaintiff Diamond Bahe's injuries and damages may include, but may not specifically be limited to, the following:

    (a) Medical bills and related expenses, past, present, and future

    (b) Physical pain and mental suffering, past, present, and future;

    (c) Loss of enjoyment of life;

    (d) Property damage;

    (e) Miscellaneous expenses, past, present, and future.

96. Plaintiff FRANCILLA MAY THOMPSON, as Guardian of K.K.T. seeks by this action to recover the full monetary value of her injuries and damages, together with punitive damages, and all available interest at the maximum legal rate.

97. Plaintiff FRANCILLA MAY THOMPSON, as Guardian of K.K.T.'s, injuries and damages may include, but may not specifically be limited to, the following:

    (a) Medical bills and related expenses, past, present, and future;

    (b) Physical pain and mental suffering, past, present, and future;

    (c) Loss of enjoyment of life;

    (d) Miscellaneous expenses, past, present, and future.

98. Plaintiff CRAIG BAHE, as Representative of the Estate of CHARLA BAHE, Deceased seeks by this action to recover the full monetary value of Charla Bahe's injuries and damages, together with punitive damages, and all available interest at the maximum legal rate.

99. The Estate's injuries and damages may include, but may not specifically be limited to, the following:

    (a)    Medical bills and related expenses, past, present, and future;

    (b)    Loss of earning capacity;

    (c)    Funeral expenses;

    (d)    Physical pain and mental suffering;

    (e)    Loss of enjoyment of life;

    (f)    Miscellaneous past expenses.

## PUNITIVE DAMAGES

100. Plaintiffs hereby incorporate all prior paragraphs of this Complaint as though stated again herein.

101. In addition to placing the unreasonably dangerous and defective subject tire into the market, giving rise to strict liability and negligence liability, and in addition to the negligence claims stated above, Defendants BRIDGESTONE also acted intentionally, maliciously, willfully, recklessly, and/or with wanton disregard for the safety of others.

102. Among others, these intentional, malicious, willful, reckless, and/or wanton acts and omissions of Defendant BRIDGESTONE, either singularly, in combination, or based on the cumulative conduct of employees of Defendant BRIDGESTONE, were a cause of Plaintiffs' injuries and damages. Accordingly, Defendant BRIDGESTONE is liable for punitive damages.

## PRAYER

WHEREFORE, the Plaintiff respectfully prays this Court for relief as follows:

    (a)    For judgment as against TAITO, including both compensatory and punitive damages, together with all available interest at the maximum legal rate;

**FIRST AMENDED COMPLAINT** - Page **18** of **20**

(b) For judgment as against JAG, including both compensatory and punitive damages, together with all available interest at the maximum legal rate;

(c) For judgment against BRIDGESTONE, including both compensatory and punitive, together with all available interest at the maximum legal rate;

(c) For judgment against NMDOT, including both compensatory and punitive, together with all available interest at the maximum legal rate;

(d) For Plaintiffs' costs incurred in pursuit of this action, including attorney's fees to the extent permitted by law; and

(e) For any and all relief for which the Court deems appropriate.

Dated: April 12, 2019

Respectfully submitted

*/s/ T. Micah Dortch*
Timothy Micah Dortch
*Associated Counsel*
**POTTS LAW FIRM, LLP**
2911 Turtle Creek Blvd., Suite 1000
Dallas, Texas 75219
(214) f396-9427
(469) 217-8296 fax
Email: mdortch@potts-law.com

Adam Funk
**POTTS LAW FIRM, LLP**
9202 San Mateo Blvd. NE
Albuquerque, New Mexico 87113
(505) 404-1499
(713) 583-5388 fax
Email: afunk@potts-law.com

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 12, 2019, I electronically served Plaintiffs' First Amended Complaint for Wrongful Death, Personal Injuries, Loss of Consortium and Punitive Damages upon all counsel of record.

*/s/ T. Micah Dortch*
TIMOTHY MICAH DORTCH
